STATE OF CONNECTICUT *v.* MARK D. BOUIER
(15917)

Foti, Lavery and Daly, Js.

Argued January 23—officially released March 25, 1997

*Alice M. Sexton,* with whom, on the brief, was *Jon L. Schoenhorn,* for the appellant (defendant).

*Lawrence J. Tytla,* senior assistant state's attorney, with whom, on the brief, was *Kevin T. Kane,* state's attorney, for the appellee (state).

FOTI, J. The defendant appeals from the judgment of conviction, rendered after a jury trial, of sexual

assault in the first degree in violation of General Statutes § 53a-70.[1] The defendant claims that the trial court improperly instructed the jury (1) by failing to instruct on compulsion, an essential element of the crime, (2) by shifting the burden to the defendant to prove consent and (3) on the use of force and the threat of the use of force. We affirm the judgment.

From the evidence presented, the jury reasonably could have found the following facts. On January 20, 1995, the victim, an eighteen year old woman, was attending a family party at the Ground Round Restaurant in Groton. At approximately 11 p.m., she met a friend at that location and together they left in the friend's car to travel to the home of the victim's boyfriend in Groton. After finding no one at home, they proceeded to the victim's home, where she changed clothes. They then proceeded to a nightclub on the Navy submarine base in Groton, arriving at approximately 11:45 p.m. They socialized and drank some alcoholic beverages before leaving at approximately 2 a.m. The victim's friend had had too much to drink and arranged for a ride with another friend, Vernon Leftridge, who had been at the club. Because they planned to stop to eat, the victim decided not to go with them. At that time, the defendant drove up and, after a brief conversation, stated that he was going in the victim's direction and would give her a ride. Neither the victim

[1] General Statutes § 53a-70 (a) provides: "A person is guilty of sexual assault in the first degree when such person (1) compels another person to engage in sexual intercourse by the use of force against such other person or a third person, or by the threat of use of force against such other person or against a third person which reasonably causes such person to fear physical injury to such person or a third person, or (2) engages in sexual intercourse with another person and such other person is under thirteen years of age and the actor is more than two years older than such person, or (3) commits sexual assault in the second degree as provided in section 53a-71 and in the commission of such offense is aided by two or more other persons actually present."

nor her friend had ever seen the defendant before that evening. When the defendant made his offer, the victim looked at Leftridge, who nodded. The victim interpreted Leftridge's gesture to be a sign of his approval. She accepted the defendant's offer to give her a ride home.

After the victim entered the defendant's automobile and told him where she lived, he responded that he would take her directly home. En route, they observed Leftridge's car parked at a convenience store. The defendant stopped and talked to Leftridge, while the victim spoke separately with her friend. After a few minutes, the defendant and the victim left, and the defendant drove through a nearby Navy housing complex to see if a friend was at home.

The defendant then drove toward the victim's home, but instead of stopping, he drove by her house. She told him to stop and that she wanted to get out, but he kept driving until they reached Eastern Point Beach. The victim repeatedly told the defendant that she wanted to go home, but he parked the car and began to rub her thigh. She told him to stop, that she had a boyfriend and that she wanted to go home. He continued to rub her thigh, saying, "Just give me a little piece of this. All I want is a little bit. It's only going to take two minutes" and "give me a little pussy." She repeatedly pushed him away, saying she wanted to go home. The defendant finally said "forget it" and drove away from the beach. He did not, however, drive toward the victim's home. The victim grabbed the steering wheel and tried to jerk it. The defendant became very angry and told her not to do that again. He then drove to New London. At one point, when he stopped his vehicle, the victim exited and began walking. The defendant drove along beside her and told her to get back in the car. As they were in a dark, wooded area, the victim got back into the car, asking the defendant to drive her home and offering to pay him to do so. She also asked

to use his car phone, but he refused to let her use it. He then drove toward Waterford and pulled into the driveway of a closed auto parts business, which was hidden from the road by a fence. She exited the car to urinate, and, upon returning to the car, was again approached by the defendant, who began to rub her and unbutton her pants. He asked for "a little bit of this" as he touched her. She responded that she was a virgin and that she did not want to be with him, but he kept pushing closer, pulling her pants down. He pushed her seat down, moved on top of her and made her place her legs around him. She repeatedly slid her legs off, saying, "Get off. This isn't what I wanted to do." As she tried to get away from him, he stated in a very forceful and commanding voice, "This is going to happen." He digitally penetrated her vagina, and then penetrated her with his penis, telling her that it would be easier if she relaxed. She told him that he was hurting her, but he told her to keep her legs up and to "stay there, stay there." Eventually he rolled off her and stated, "You're lucky I didn't beat you like another man would have." He told her to get dressed and then drove her directly home without saying a word to her. She arrived home between 4 and 4:30 a.m.

I

The defendant first claims that the trial court improperly failed to instruct the jury that compulsion was a necessary element of the crime of sexual assault in the first degree, in violation of his due process rights under the fourteenth amendment to the United States constitution, and article first, § 8 of the Connecticut constitution. The defendant cannot prevail on his claim.

The defendant failed to preserve this claim at trial and seeks review pursuant to *State* v. *Golding*, 213 Conn. 233, 567 A.2d 823 (1989). Under *Golding*, "a defendant can prevail on a claim of constitutional error

not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." (Emphasis in original.) Id., 239–40. We are free to dispose of the claim "by focusing on whichever condition is most relevant in the particular circumstances." Id., 240. In this case, we conclude that the defendant has failed to satisfy the third condition of *Golding*.

The state concedes, and we agree, that the first two prongs of *Golding* are satisfied. "An accused has a fundamental right, protected by the due process clauses of the federal and Connecticut constitutions, to be acquitted unless proven guilty of each element of the charged offense beyond a reasonable doubt." (Internal quotation marks omitted.) *State* v. *Williams*, 202 Conn. 349, 363, 521 A.2d 150 (1987). It is well established that improper jury instructions on an essential element of the crime implicate a fundamental constitutional right. *State* v. *Cooper*, 38 Conn. App. 661, 666, 664 A.2d 773, cert. denied, 235 Conn. 908, 665 A.2d 903 (1995). The due process clause prescribes that the defendant has a right to require the fact finder to determine each element of an offense charged beyond a reasonable doubt. *Sullivan* v. *Louisiana*, 508 U.S. 275, 278, 113 S. Ct. 2078, 124 L. Ed. 2d 182 (1993); *State* v. *Guthridge*, 164 Conn. 145, 152–53, 318 A.2d 87 (1972), cert. denied, 410 U.S. 988, 93 S. Ct. 1519, 36 L. Ed. 2d 186 (1973).

We must, however, consider whether the defendant has met his burden as to the third requirement of *Golding*; i.e., whether the alleged constitutional violation clearly exists and, if so, whether it clearly has deprived

the defendant of a fair trial.[2] Because the defendant raises a constitutional challenge to the trial court's instruction,[3] we must review the jury charge as a whole to determine whether it is reasonably possible that the jury was misled. *State* v. *Lemoine*, 39 Conn. App. 657, 666 A.2d 825 (1995).

Our review of the charge in its entirety indicates that the trial court's instructions were a correct statement

---

[2] Whereas the first two conditions of *Golding* are determinations of whether a defendant's claim will be reviewed, the third prong constitutes a limited review of the merits. See *Wilson* v. *Cohen*, 222 Conn. 591, 603, 610 A.2d 1177 (1992).

[3] As it is relevant to this claim, the court's instruction was as follows: "The defendant here is charged with the crime of sexual assault in the first degree. Our statute defining this crime reads as follows: 'A person is guilty of sexual assault in the first degree when such person compels another person to engage in sexual intercourse by the use of force against such other person or by the threat of use of force against such other person which reasonably causes such person to fear physical injury to herself.'

"In order to commit the crime of sexual assault in the first degree, the state must prove beyond a reasonable doubt (1) that sexual intercourse had taken place and (2) the defendant compelled [the victim] to engage in such sexual intercourse by the use of force or by the threat of use of force. . . . If you should find that sexual intercourse had occurred you must next determine whether the defendant used force or the threat of force. Use of force means either the use of a dangerous instrument, or use of actual physical force or violence or superior physical strength against [the victim]. Thus, if you find that the state has proved beyond a reasonable doubt that sexual intercourse occurred, and, two, that it occurred because of the defendant's use of force or threatened use of force, then if both of those elements have been proven to you by proof beyond a reasonable doubt, your verdict must be guilty. On the other hand, if either point has not been proven to you by proof beyond a reasonable doubt, you must find the defendant not guilty.

"The defendant in this case has presented evidence or claims that [the victim] and the state—that the acts which [the victim] and the state have charged were done with her consent. A jury cannot convict the defendant of the crime charged if the conduct of [the victim] was such that the defendant had a justified reasonable belief that she had consented. Any act that is engaged in consensually would necessarily not be an act engaged in under compulsion of the use of force or the threat of force. If you were to find that [the victim] had consented to the acts which are the basis for the charge here, then your verdict must be not guilty."

of the law. In its charge, the court informed the jury of the elements of the crime, including compulsion. Accordingly, we conclude that the alleged constitutional violation does not clearly exist, and, therefore, that the defendant's claim fails to satisfy the third prong of *Golding*.

## II

The defendant next claims that, rather than requiring the state to prove lack of consent beyond a reasonable doubt, the trial court's instruction improperly shifted to him the burden to prove that the victim had consented to have intercourse. The defendant maintains that because the instruction was inadequate in regard to the element of compulsion, coupled with the implication that in order to acquit him the jury had to find that the victim had consented, the instruction unconstitutionally shifted to him the burden to prove that the victim had consented.[4] We do not agree.

This claim was not properly preserved at trial and the defendant again seeks review pursuant to *Golding*. Our review of the charge in its entirety discloses that the trial court properly and thoroughly instructed the jury on the presumption of innocence and on the state's burden of proving each element of the crime beyond a reasonable doubt. Contrary to the defendant's assertion, the court did not instruct that the only way the jury could acquit him was if it found that the victim had consented, but rather, that if it were to find that the victim had consented to the acts that constituted the basis for the charge, then it must acquit him. Furthermore, as discussed in part I, the instruction on compulsion was not inadequate. Because the alleged constitutional violation does not clearly exist, the third prong of *Golding* is not satisfied.

---

[4] The defendant acknowledged that sexual intercourse with the victim occurred, but claimed it was a consensual act.

## III

The defendant next asserts that there was insufficient evidence on which the jury could reasonably find him guilty beyond a reasonable doubt. Although the defendant neither objected to the court's instruction,[5] nor moved for a judgment of acquittal, he maintains that even if it is assumed arguendo that there was sufficient evidence on the issue of force, there was insufficient evidence of the threat of the use of force. He claims that the trial court improperly allowed the jury to consider that theory of culpability, i.e., the threat of use of force, in violation of his due process rights pursuant to article first, § 8, of the Connecticut constitution.[6] We conclude that the evidence was sufficient to establish a basis for the jury to have found the threat of the use of force.[7]

While we agree that the use of force itself implies the threat of the use of further force to accomplish the sought after objective, the record before us satisfies us

[5] The trial court instructed by the use of the disjunctive, i.e., "use of force or threat of use of force," and "use of force or threatened use of force."

[6] Article first, § 8, of the Connecticut constitution provides: "In all criminal prosecutions, the accused shall have a right to be heard by himself and by counsel; to be informed of the nature and cause of the accusation; to be confronted by the witnesses against him; to have compulsory process to obtain witnesses in his behalf; to be released on bail upon sufficient security, except in capital offenses, where the proof is evident or the presumption great; and in all prosecutions by indictment or information, to a speedy, public trial by an impartial jury. No person shall be compelled to give evidence against himself, nor be deprived of life, liberty or property without due process of law, nor shall excessive bail be required nor excessive fines imposed. No person shall be held to answer for any crime, punishable by death or life imprisonment, unless on a presentment or an indictment of a grand jury, except in the armed forces, or in the militia when in actual service in time of war or public danger."

[7] Because we conclude as we do, we find it unnecessary to determine whether *State* v. *Chapman*, 229 Conn. 529, 643 A.2d 1213 (1994), controls, or whether, as the defendant claims, article first, § 8, of the Connecticut constitution should be construed as providing greater protection than afforded under its federal counterpart.

that the jury had before it evidence from which it could reasonably have found the threat of force. The defendant's statement to the victim before the act was completed, "This is going to happen," and the manner in which it was said, could reasonably have caused the victim to regard it as a threat of physical injury. Moreover, from our review of the evidence detailed previously, we conclude that the jury could properly have found beyond a reasonable doubt that the victim's words and actions could not reasonably be viewed to show her consent to intercourse with the defendant. The evidence, therefore, was more than sufficient to support the verdict; the jury reasonably could have found that the defendant threatened the use of force in order to compel the victim to engage in sexual intercourse.

The judgment is affirmed.

In this opinion the other judges concurred.