STATE OF CONNECTICUT *v.* CLARENCE MARSALA
(AC 19005)

Foti, Hennessy and Zarella, Js.

Argued April 28—officially released August 1, 2000

*Katharine S. Goodbody*, special public defender, for the appellant (defendant).

*Peter Anthopolos*, special deputy assistant state's attorney, with whom, on the brief, were *Jonathan C. Benedict*, state's attorney, and *Margaret E. Kelley*, senior assistant state's attorney, for the appellee (state).

*Opinion*

FOTI, J. The defendant, Clarence Marsala, appeals from the judgment of conviction, rendered after a jury trial, of larceny in the fourth degree in violation of

.

.

General Statutes § 53a-125 (a).[1] On appeal, the defendant claims that the evidence presented at trial was insufficient to sustain his conviction. The defendant also claims that the trial court improperly (1) excluded evidence concerning the defense of necessity, (2) instructed the jury and (3) denied his request for new counsel. We affirm the judgment of the trial court.

On the basis of the evidence adduced at trial, the jury reasonably could have found the following facts. Some time late in 1996, the defendant brought his 1987 Chrysler New Yorker to Milex, an automobile repair shop located in Stratford, for the purpose of an analysis because the vehicle was not running properly and was losing power. After tests were performed, representatives of Milex recommended replacing the head and timing belt, together with other incidental work. The defendant objected and indicated a different procedure would suffice. He agreed to pay Milex $360 for six hours of labor, plus the cost of having one valve machined and the others checked. After the work was completed, on September 18, 1996, the defendant was given a bill in the amount of $561.80, which included a bill in the amount of $155 from the machine shop. The defendant refused to pay, insisting that the bill should be only $360 plus tax. The defendant left and Milex kept the car. Two weeks later Milex notified the defendant it would accept the $360, but the defendant refused. On November 12, 1996, Milex provided the department of motor vehicles with written notice of a bailee's lien on the defendant's automobile, and shortly thereafter

---

[1] General Statutes § 53a-125 (a) provides: "A person is guilty of larceny in the fourth degree when he commits larceny as defined in section 53a-119 and the value of the property or service exceeds five hundred dollars."

General Statutes § 53a-119 provides in relevant part: "A person commits larceny when, with intent to deprive another of property or to appropriate the same to himself or a third person, he wrongfully takes, obtains or withholds such property from an owner. . . ."

received confirmation of the lien's registration in the amount of $561.80.

At some time on either Saturday, November 23, 1996, or Sunday, November 24, 1996, the defendant took his car from Milex's property. The police were notified and officers spoke with the defendant, who admitted taking the car and driving it approximately twenty miles to his house in Seymour. The officers asked that the defendant either to return the car or to pay the balance claimed and he refused. He was later arrested on a warrant.

I

The defendant first claims that the state failed to prove every essential element of the crime beyond a reasonable doubt and, therefore, that his conviction cannot stand. Specifically, the defendant claims that the evidence was insufficient to show that he took "property" from an owner or that his actions constituted a "theft of services."[2] We disagree.

"The standard of review employed in a sufficiency of the evidence claim is well settled. [W]e apply a two-part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the [trier of fact] reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt. . . . On appeal, we do not ask whether there is a reasonable view of the evidence that would support a reasonable hypothesis of innocence.

[2] By an amended information, the state charged that "at the Town of Stratford, County of Fairfield, on or about the 25th day of November, 1996, [the defendant] with intent to deprive another of property or to appropriate the same to himself or a third person, namely, the value of labor, professional services or parts, wrongfully took, obtained or withheld such property from an owner, and the value of such property exceeded five hundred dollars, in violation of § 53a-125 . . . ."

We ask, instead, whether there is a reasonable view of the evidence that supports the [trier of fact's] verdict of guilty." (Citation omitted; internal quotation marks omitted.) *State* v. *Kondracki*, 51 Conn. App. 338, 342, 721 A.2d 567 (1998).

"We are guided by the well established principle that '[t]he trier of fact may accept or reject the testimony of any witness.' *State* v. *Martin*, 38 Conn. App. 731, 744, 663 A.2d 1078 (1995), cert. denied, 237 Conn. 921, 676 A.2d 1376 [cert. denied, 519 U.S. 1044, 117 S. Ct. 617, 136 L. Ed. 2d 541] (1996). It is the trier of fact's 'exclusive province to weigh the conflicting evidence and determine the credibility of the witnesses.' *State* v. *Hooks*, 30 Conn. App. 232, 239, 619 A.2d 1151, cert. denied, 225 Conn. 915, 623 A.2d 1025 (1993). We give deference to the evidence and the reasonable inferences drawn therefrom that support the trial court's determination of guilt. *State* v. *Dukes*, 46 Conn. App. 684, 690, 700 A.2d 119 (1997)." *State* v. *Kondracki*, supra, 51 Conn. App., 342–43.

This appeal appears to present an issue of first impression, that is, whether a bailor who takes his own property from the lawful possession of a bailee can be convicted of larceny for depriving the bailee of the value of his services, as secured by a bailee's lien on the property. We conclude that he may.

Evidence was presented to the jury that Milex's lien on the defendant's vehicle had been registered, pursuant to General Statutes § 49-61 (b),[3] in the amount of

[3] General Statutes § 49-61 (b) provides: "If the property is a motor vehicle and if no application that the lien be dissolved upon such substitution of a bond is made within thirty days of the date of the completion of the work upon the property by the bailor for hire, the bailee shall send a written notice to the Commissioner of Motor Vehicles, stating the engine number and chassis number thereof, the date the motor vehicle was left with him, the date the work was completed, the amount for which a lien is claimed, the registration thereof if any number plates are on the motor vehicle and the name of the owner or person who authorized the work to be done, and shall enclose a fee of five dollars. Such notice shall be placed on file by the

$561.80 in unpaid repairs. Milex's continued right of possession of that vehicle became superior to that of the defendant. While the defendant continued to hold legal title to the vehicle, Milex was the "owner" and the defendant was the "taker," pursuant to General Statutes § 53a-118 (a) (5).[4] Under these facts, it is therefore possible for the defendant to be convicted of larceny for taking property that he owns, and for depriving Milex of its superior right of possession and the amount of its lien interest in the vehicle.[5]

While the amended information; see footnote 2; might have been more artfully drawn, it was sufficient to put the defendant on proper notice of the charge against him. Property as defined in § 53a-118 (a) (1)[6] means among other things personal property, which includes the vehicle in question. The value of the theft, however, is limited by the amount of the bailee's lien, as secured by the property itself.[7] The crime of theft of services,

Commissioner of Motor Vehicles and be open to public inspection. If the motor vehicle is subject to a security interest, the commissioner shall send the bailee the name and address of any lienholder as recorded on the certificate of title. Any sale under the provisions hereinafter stated shall be void unless the notice required in this section has been given to said commissioner, if the property is a motor vehicle."

[4] General Statutes § 53a-118 (a) (5) provides: "An 'owner' means any person who has a right to possession superior to that of a taker, obtainer or withholder."

[5] The lien is dependent on retention or possession of the property and is lost when possession is surrendered, even where the owner takes the property for his personal use without objection with an agreement that it will be returned. *Fishell* v. *Morris*, 57 Conn. 547, 551, 18 A. 717 (1889).

[6] General Statutes § 53a-118 (a) (1) provides: " 'Property' means any money, personal property, real property, thing in action, evidence of debt or contract, or article of value of any kind. Commodities of a public utility nature such as gas, electricity, steam and water constitute property, but the supplying of such a commodity to premises from an outside source by means of wires, pipes, conduits or other equipment shall be deemed a rendition of a service rather than a sale or delivery of property."

[7] Under these facts, the defendant therefore could not be charged with larceny in the third degree in violation of General Statutes § 53a-124 (a) (1), which governs larceny of property that "consists of a motor vehicle, the

as set forth in General Statutes § 53a-119 (7),[8] need not be proven and is not relevant to the state's charge of larceny under § 53a-125. We also find no merit to the defendant's claim that the state failed to prove that he changed the circumstances of the parties or affected Milex's claims when he took the automobile, or that he attempted to take any underhanded action. The jury had before it sufficient evidence to find beyond a reasonable doubt the elements of larceny in the fourth degree, including the value of Milex's possessory interest, that is, the value of its lien being in excess of $500.

## II

The defendant next argues that the court improperly excluded evidence regarding the common-law defense of necessity.

value of which is five thousand dollars or less," or any greater degree of larceny, based on the value of the motor vehicle.

[8] General Statutes § 53a-119 (7) provides: "Theft of services. A person is guilty of theft of services when: (A) With intent to avoid payment for restaurant services rendered, or for services rendered to him as a transient guest at a hotel, motel, inn, tourist cabin, rooming house or comparable establishment, he avoids such payment by unjustifiable failure or refusal to pay, by stealth, or by any misrepresentation of fact which he knows to be false; or (B) (i) with intent to obtain railroad, subway, bus, air, taxi or any other public transportation service without payment of the lawful charge therefor or to avoid payment of the lawful charge for such transportation service which has been rendered to him, he obtains such service or avoids payment therefor by force, intimidation, stealth, deception or mechanical tampering, or by unjustifiable failure or refusal to pay, or (ii) with intent to obtain the use of equipment, including a motor vehicle, without payment of the lawful charge therefor, or to avoid payment of the lawful charge for such use which has been permitted him, he obtains such use or avoids such payment therefor by means of any false or fraudulent representation, fraudulent concealment, false pretense or personation, trick, artifice or device, including, but not limited to, a false representation as to his name, residence, employment, or driver's license; or (C) obtaining or having control over labor in the employ of another person, or of business, commercial or industrial equipment or facilities of another person, knowing that he is not entitled to the use thereof, and with intent to derive a commercial or other substantial benefit for himself or a third person, he uses or diverts to the use of himself or a third person such labor, equipment or facilities."

"Where an offer of proof is made with respect to a defense and it is clear from the offer of proof that the defense is insufficient as a matter of law, the trial court may properly refuse to permit evidence of the defense to be submitted to the jury." *State* v. *Drummy*, 18 Conn. App. 303, 309–10, 557 A.2d 574 (1989).

"This court has . . . adopted a definition of the common law defense of necessity that requires a showing by the defendant (a) that there [was] no . . . legal alternative available, (b) that the harm to be prevented [was] imminent, and (c) that a direct causal relationship [may] be reasonably anticipated to exist between defendant's action and the avoidance of harm." (Internal quotation marks omitted.) *State* v. *Anthony*, 24 Conn. App. 195, 209, 588 A.2d 214, cert. dismissed, 218 Conn. 911, 591 A.2d 813, cert. denied, 502 U.S. 913, 112 S. Ct. 312, 116 L. Ed. 2d 254 (1991); see also *State* v. *Drummy*, supra, 18 Conn. App. 309.

Our review of the record leads us to conclude that the court properly refused to allow the defendant to present evidence concerning the defense of necessity. The defendant could not satisfy the first element of the defense because he had a legal alternative available. In fact, he does not dispute that he could have dissolved Milex's lien by substituting a bond with surety pursuant to General Statutes § 49-61 (a).[9]

## III

The defendant claims that the court improperly instructed the jury on the crime of larceny in the fourth

---

[9] General Statutes § 49-61 (a) provides: "The owner of any personal property which is held by one who claims to be a bailee for hire of that personal property and to have a lien in consequence thereof, or anyone having a legal or equitable interest in that property, may apply in writing to any judge of the Superior Court, within whose jurisdiction that personal property is held or the lienor resides, to dissolve the lien upon the substitution of a bond with surety."

degree by (1) repeatedly referring to "property or services" in an interchangeable or synonymous manner and (2) referring to the defendant's not guilty plea. We disagree.

The defendant's first claim of impropriety as to the charge is unpreserved. The defendant neither filed a request to charge nor noted an exception to the court's instruction in this regard. The defendant has failed to seek review of his unpreserved claim under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), or under the plain error doctrine. Practice Book § 60-5. This claim will not be reviewed.

The defendant also argues that the court's instruction referring to his not guilty plea was reversible error. The court instructed the jury: "The defendant made certain statements to the police . . . . Any statements of the accused . . . admitted as evidence are to be considered by you in connection with all other evidence in this case. Made, as it was, out of this court, it is not like the sworn testimony offered here before you. It is to be considered by you as a declaration inconsistent with the accused's plea of not guilty. It may be evidence circumstantial of the truth of the statements made in it. It is for you to determine what weight is given to it."

While we do not invite comments on a defendant's plea during jury instructions, we find this unartfully phrased instruction to be harmless error, if indeed error. The jury could have found the defendant's statements to be admissions and, in some fashion, inconsistent with the position he took during his trial. Our review of the whole charge, however, leads us to conclude that it is not reasonably possible that the jury was misled by this instruction. "The test to be applied to any part of a charge is whether the charge, considered as a whole, presents the case to the jury so that no injustice will result." (Internal quotation marks omitted.) *State*

v. *McNair*, 54 Conn. App. 807, 818, 738 A.2d 689, cert. denied, 251 Conn. 913, 739 A.2d 1249 (1999). Considered as a whole, the charge here properly presented the case to the jury so that no injustice resulted.

IV

Lastly, the defendant claims that the court improperly denied his request for new counsel or to proceed pro se. We disagree.

"The standard when reviewing a denial of a request for alternate counsel . . . is whether the trial court abused its discretion in determining that a factual basis did not exist for granting the request." (Internal quotation marks omitted.) *State* v. *Morico*, 14 Conn. App. 140, 144, 539 A.2d 1033, cert. denied, 208 Conn. 812, 546 A.2d 281 (1988). Practice Book § 3-10 requires that a court find good cause to grant a motion to withdraw. Our Supreme Court has held that "to work a delay by a last minute discharge of counsel there must exist exceptional circumstances." (Internal quotation marks omitted.) *State* v. *Robinson*, 227 Conn. 711, 726, 631 A.2d 288 (1993). "We must distinguish between a substantial and timely request for new counsel pursued in good faith, and one made for insufficient cause on the eve or in the middle of trial." *State* v. *Drakeford*, 202 Conn. 75, 82, 519 A.2d 1194 (1987). We find no exceptional circumstances or good cause here.

"[A] trial court has a responsibility to inquire into and to evaluate carefully all substantial complaints concerning court-appointed counsel . . . ." *State* v. *Robinson*, supra, 227 Conn. 726. The extent of that inquiry, however, lies within the discretion of the trial court. *State* v. *Hansen*, 39 Conn. App. 384, 398–99, 666 A.2d 421, cert. denied, 235 Conn. 928, 667 A.2d 554 (1995). "A trial court does not abuse its discretion by failing to make further inquiry where the defendant has already

had an adequate opportunity to inform the trial court of his complaints." Id., 399.

The defendant informed the court that he disagreed with his counsel over trial tactics and strategy, and that he had difficulty communicating with counsel in that regard. Our review of the record leads us to conclude that the court, having considered the claims made by the defendant and having found them not to be substantial, properly found that the defendant did not demonstrate good cause. The court did not abuse its discretion in finding the defendant's claims to be insufficient to justify the appointment of new counsel. Further, the defendant did not assert his right to self-representation in a clear and unequivocal manner, but rather agreed to continue with his court-appointed attorney.

The judgment is affirmed.

In this opinion the other judges concurred.